IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 24-01404 (MCF) |
| RUBEN OMAR GONZALEZ ESCHEVARRIA | CHAPTER 12 |
| Debtor | |

### OPINION AND ORDER

The Debtor, Ruben Omar Gonzalez Echevarria, objects to Condado 5 LLC's secured claim challenging the perfection of one of its liens. He argues that Condado filed a financing statement without his consent, after the initial financial statement had expired. Condado contends that the Debtor authorized its creditor to file a financial statement with the Puerto Rico Department of State. Both parties seek summary judgment. For the reasons expressed below, the court grants Condado's motion for summary judgment and denies Debtor's motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure allows a motion for summary judgment to be granted if there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law.[1] Fed. R. Bankr. P. 7056. When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross-motion and as the nonmoving party in response to the other party's motion. *Wells Real Estate Inv. Trust II, Inc.*, 615 F.3d 45, 51 (1st Cir. 2010).

I.      UNCONTESTED FACTS

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. All references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

-1-

Both parties agree that there are no contested facts. They concede that the Debtor, a dairy farmer, was extended a credit facility by Condado's predecessor-in-interest. The Debtor secured the credit facility with real property mortgages and with 51,133 quarts of the Debtor's bi-weekly milk quota. On March 30, 2009, the Debtor executed a security agreement, granting Condado's predecessor a lien over his interests, rents, proceeds arising from the milk quotas, and the continuing production of milk under the quotas every 14 days. The lien was duly registered with the Agricultural Department of the Commonwealth of Puerto Rico (in Spanish, "Oficina de Reglamentacion de la Industria Lechera" ("ORIL")) and an initial financing statement was filed with the Puerto Rico State Department on April 17, 2009 (Filing Number 2009002187). Both the Debtor and Condado's predecessor signed the initial financing statement before a notary public.

The following year, the Debtor received an additional credit facility from Condado's predecessor. To secure this credit facility, the Debtor executed another security agreement on August 18, 2010. Both the Debtor and Condado's predecessor signed the initial financing statement before a notary public. It was filed with the Puerto Rico State Department on October 5, 2010 (Filing Number 2010005453).

Seven years later, Condado acquired the loan. On July 10, 2017, the predecessor filed with the Puerto Rico State Department two amendments to the Financings Statements of 2009 and 2010 to reflect the name of the new assignee, Condado 5, LLC.

Condado did not file a continuation statement for any of the financing statements; instead, it filed two new financing statements (Form UCC1PR) on June 17, 2021. Filing Number 20210007150 and Filing Number 20210007152 to cover the bi-weekly milk quota and the farming equipment, inventory, accounts receivable, and intangibles. The Form UCC1PR, which was revised in 2014, no longer requires signatures of the debtor or creditor.

On April 5, 2025, the Debtor filed a voluntary petition under chapter 12 of the Bankruptcy Code. Condado filed a proof of claim for $1,030,628.05, as fully secured (Claim No. 3-1). The Debtor objects Condado's claim challenging the validity of the UCC1PR No. 20210007152 and

thereby asserting that with respect to farming equipment, inventory, accounts receivable, and intangibles, Condado is an unsecured creditor.

## II.    POSITION OF THE PARTIES

The Debtor acknowledges that as of the filing of the bankruptcy case, Condado has a first rank lien over his milk quota which was perfected at ORIL (UCC-1PR 20210007150) and a secured interest over his real property.  The Debtor disputes that Condado holds a perfected lien over his farming equipment, inventory, accounts receivable, and intangibles asserting that Condado's 2010 Financing Statement expired in 2020 and that the filing by Condado of a financing statement (UCC-1PR 20210007152) on June 17, 2021, without Debtor's authorization has no effect.

The Debtor points out that financing statements have an expiration period.  To extend a financing statement beyond its expiration period, the creditor must file a continuation statement within six months before the ten-year period lapses.  The Debtor posits that the 2010 Financing Statement expired in 2020.  The creditor never filed a continuation statement to extend the lien as required by the law.  As a result of such failure, the 2010 Financing Statement expired by operation of law. The Debtor claims that Condado cannot file a new financing statement without his authorization.

Condado counters that it renewed its security interest with the Puerto Rico State Department on June 17, 2021, by filing a new initial financing statement, Filing Number 20210007152.  This financing statement, which lapses in five years, that is, in June 2026, does not have the signature of the Debtor or Condado because it is no longer required on the form.

Condado points out that in two separate security agreements, the Debtor explicitly authorized its creditor to file its own financing statement at any time.   Condado refers to the security agreements that state:

> Financing Statement: This Agreement or, otherwise, a Financing Statement, shall be filed with the Registry of Commercial

-3-

Transactions and wherever it is required or advisable for execution of the Encumbrance. For this purpose, the appearing parties have signed a Financing Statement, a copy of which has been made a part of and incorporated to this Agreement [for] reference, clarifying that, notwithstanding the above, a copy of this Agreement duly authenticated as true and correct in accordance with the Notarial Act shall be enough to be used as a financing statement, **and stipulating that the BANK shall be able to, alone, execute and file, with the Department of State, the Property Registry, or wherever this is required, a declaration of continuation or any other declaration allowed by the Law of Commercial Transactions with respect to the Encumbrance, any part of the Encumbered Property or any proceeds stemming from the latter, whenever it deems it advisable.**

Docket No. 155 at 6; Docket No. 218.

Condado cites three bankruptcy cases to support its position that the Debtor can authorize its creditor to file multiple financing statements, even after the lapse date of an initial financing statement. In *Bank One v. Bononi (In re Aliquippa Mach. Co.)*, 343 B.R. 145 (Bankr. W.D. Pa. 2006), the court found that the language in the security agreement granted the creditor the authority to file a second financing statement and re-perfect the security interest. The security agreement in *Bank One* reads:

> Pursuant to the Security Agreements, the Debtor (a) 'irrevocably appoint[ed] Lender [(i.e., Bank One)] as its attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in th[ese Security] Agreement[s],' and (b) agreed that 'the Lender [(i.e., Bank One)] may at any time, and without further authorization from Grantor [(i.e., the Debtor)], file a carbon, photographic or other reproduction of any financing statement or of th[ese Security] Agreement[s] for use as a financing statement.'

*Id.* at 150.

The court explained that Pennsylvania's Article 9 permitted re-perfection of a security interest by the filing of a second financing statement after the initial financing statement had expired. *Id.* at 148-149.

Condado also refers to *Ward v. Bank of Granite (In re Hickory Printing Grp., Inc.)*, 479 B.R. 388, 400 (Bankr. W.D.N.C. 2012), where the court found that once a UCC financing

statement terminated, it could not be lawfully revived. A new financing statement needs to be filed to re-perfect the interest. No discussion is made in that case as to whether the security agreement between the parties granted the creditor authorization to file a new financing statement.

The third case cited by Condado holds that if a financing statement has expired, it cannot be revived by a continuation statement. In *Official Comm. Of Unsecured Creditors of Rancher's Legacy Meat Co. v. Ratcliff (In re Rancher's Legacy Meat Co.)*, 616 B.R. 532, 540 (Bankr. D. Minn. 2020), the court expressed:

> The available case law, while sparse, confirms that once a Financing Statement has lapsed, a Continuation Statement cannot revive it: '. . . after a financing statement has lapsed for failure to file a continuation statement within five years, nothing remain[s] to be continued and a subsequently filed continuation statement [is], therefore, ineffective.' *In re Commercial Millwright Serv. Corp.*, 245 B.R. at 601 (citing *General Motors Acceptance Corp. v. First Nat'l Bank*, 139 B.R. 919, 924 (Bankr. D. Neb. 1991)).

These cases support the position that a secured creditor cannot revive its expired financing statement by filing a continuation statement after the lapse date. Condado did not attempt to revive its perfected status by filing a continuation statement within the six months required by law, 19 L.P.R.A. § 2335(d).

Thus, the dispute centers on whether Condado needed Debtor's authorization to file another financing statement over its farming equipment, inventory, accounts receivable, and intangibles, after the initial financing statement had expired. Critical to our determination is whether the language in the security agreements permitted Condado to file a brand-new financing statement, even after the expiration date of the original financing statement.

### III. GOVERNING LAW AND ANALYSIS

In bankruptcy, property rights arise from state law. *Butner v. United States*, 440 U.S. 48 54-55 (1979); *Hundley v. Marsh (In re Hundley)*, 603 F.3d 95, 97 (1st Cir. 2010); *Banco Santander P.R. v. Puerto Rico Hosp. Supply, Inc. (In re Puerto Rico Hosp. Supply, Inc.)*, 617 B.R. 181, 195

(Bankr. D.P.R. 2020). The Puerto Rico Commercial Transactions Act governs secured transactions in general. 19 L.P.R.A. §§ 2211-2409. It contains a modified version of Article 9 of the Uniform Commercial Code. To perfect an interest in collateral, a secured party must file a financing statement with the Puerto Rico State Department. 19 L.P.R.A. § 2102(1). The financing statement places third parties on notice that a secured party may have a perfected interest in the collateral described. *In re Numeric Corp.*, 485 F.2d 1328, 1331-32 (1st Cir. 1973); *XYnergy Healthcare Capital II LLC v. Municipality of San Juan*, 516 F. Supp. 3d 137, 155-56 (D.P.R. 2021); *Angulo-Mestas v. Editorial Televisa Intern., S.A.*, 747 F. Supp. 2d 255, 258-59 (D.P.R. 2010).

In 2009 and 2010, when the Financing Statements were executed, the law at that time provided that an initial financing statement was valid for ten years, 19 L.P.R.A. § 2153(2) (prior to the amendment enacted in 2014). In our case, the ten years applied to the 2009 and 2010 Financing Statements. Consequently, the 2009 and 2010 Financing Statements expired in 2019 and 2020, respectively.

The Puerto Rico Commercial Transaction Act used to specify a mechanism for creditors to re-perfect their security interests. "Section 2152 provides a mechanism for creditors to re-perfect their security interest if a prior financing statement lapsed: "(2) A financing statement which otherwise complies with subsection (1) of this section is sufficient when it is signed by the secured party instead of the debtor [if] it is filed to perfect a security interest in: ... (c) collateral as to which the filing has lapsed…"" *Intl. Home Prods., Inc. v. First Bank of Puerto Rico, Inc.*, 495 B.R. 152, 160 (D.P.R. 2013)(referring to P.R. Laws Ann. tit. 19 § 2152).[2] Section 2152 was repealed in 2012. Today, the Puerto Rico Commercial Transaction Act, as amended, does not provide for the re-perfection of a security interest once the time of the original financing statement has elapsed. However, "[R]e-perfecting a security interest is relatively straightforward; **as long as the language used in the parties' security agreements provides for it**, secured parties may

---

[2] Law 208 of August 17, 1995, as amended, § 9-402, P.R. Laws Ann. Tit. 19 § 2152 (repealed 2012).

file a second Financing Statement after the lapse of an initial Financing Statement." *Rancher's Legacy Meat,* 616 B.R. at 540 (emphasis added).

The 2009 and 2010 Security Agreements clearly authorize the creditor to "execute and file on its own with the Department of State … a continuation statement."  Although one was never filed, the parties also agreed in the security agreements that the creditor could execute "any other statement permitted by the Commercial Transactions Law… at any time it deems appropriate."   During the time-period between October 2020 and June 2021, when the initial financing statement elapsed and until Condado filed a new Financing Statement, Condado was left unprotected, without a perfected lien.  However, prior to the bankruptcy case, Condado remedied prospectively their unsecured status by filing a new financing statement which once again perfected its lien.

The court holds that Condado has a perfected security interest over the Debtor's farming equipment, inventory, accounts receivable, and intangibles because the 2009 and 2010 Security Agreements authorized Condado to file any other declaration allowed by the Commercial Transactions Act in relation to the encumbrance; this includes a new financing statement after the initial one expired.  Hence, with the filing of Financing Statement No. 20210007152, on June 17, 2021, at the Puerto Rico State Department, Condado's lien is valid and effective against third parties.

-7-

#### IV.        CONCLUSION

In the present case, the security agreements between the Debtor and the Condado's predecessor provided the authorization to file "any other declaration allowed by the Commercial Transactions Act," which certainly include the filing of a financing statement.  Consequently, Condado is entitled to summary judgment in its favor (Docket No. 155). The Debtor's motion for summary judgment and his objection to Claim No. 3-1 filed by Condado are denied (Docket Nos. 79 and 149).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of February 2026.

_Mildred Cabán_
MILDRED CABAN FLORES
United States Bankruptcy Judge